BARNARD, (KELLOGG v.) See Case No. 7,661.

---

## Case No. 1,005.

### BARNARD et al. v. MORTON.

[1 Curt. 404.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1853.

CUSTOMS DUTIES—DUTIABLE VALUE—ACT OF 1842 —SALT IN SACKS.

1. The sixteenth section of the tariff act of August 30, 1842, (5 Stat. 563,) is not repealed by the tariff act of July 30, 1846, (9 Stat. 42,) and still prescribes the rule for ascertaining the dutiable value of merchandise, procured by purchase, on which an ad valorem duty is imposed.

[Followed in Kriesler v. Morton. Case No. 7,933. Distinguished in Forman v. Peaslee, Case No. 4,941.]

2. The expense of sacks, in which salt is packed for importation from Liverpool, is embraced under the words "all costs" in that section, and is to be added to the market value, to ascertain the dutiable value.

[Cited in Saxonville Mills v. Russell, Case No. 12,413.]

[See U. S. v. Clement, Case No. 14,815.]

At law. This was an action for money had and received [brought] by [George M. Barnard and others, composing the firm of] Barnard, Adams & Co., against Marcus Morton, late collector of the customs for the port of Boston, to recover a sum of money alleged

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

to have been illegally exacted as duties. After introducing witnesses, the substance of whose testimony appears in the opinion of the court, the parties agreed, that, upon this evidence, and the law applicable thereto, the court should direct a verdict. [Verdict directed for defendant.]

Choate & Bell, for plaintiffs.
Hallett, Dist. Atty., for defendant.

CURTIS, Circuit Justice. On the third day of February, 1849, Messrs. Barnard, Adams & Co. entered, at the custom-house in Boston, 2670 sacks of salt, imported from Liverpool. The invoices specified, first, the cost of the salt; second, the number and cost of the sacks in which the salt was imported; third, the charges, consisting of river freight, dock and town dues, mats, cartage of sacks, and filling; and fourth, the commissions. The collector assessed the ad valorem duty of twenty per centum on the footing of the invoice. The plaintiffs protested against so much of the duty as was thus imposed on the cost of the sacks, and, having paid it, this action is brought to recover it back.

The plaintiffs have called witnesses, skilled in the trade, who have testified, that long before the tariff law of 1846, invoices of salt were accustomed to be made as these are made; that the cost of the sacks in which the salt is exported, had not usually or ever been included among the "charges." One witness, who had been extensively engaged in the trade for ten years, and had resided in Liverpool one half that time, testified, that the salt exported from Liverpool is chiefly made in the county of Cheshire; that the manufacturers have agents at Liverpool, who sell it, deliverable either at the works, or at the port of Liverpool. It is sold in bulk, by the ton, and the purchaser directs it to be packed in bleached or half-bleached sacks, the former for fine salt, the latter for coarse. Except some fine salt, known as "factory-filled salt," it comes down the Mersey in bulk, and is filled on board, or alongside the vessel in which it is exported, at the expense of the purchaser. The seller procures the bags for the purchaser, and makes a separate charge to him of their cost; and the invoices make the bags a distinct item. The charges in the invoices are the expenses incident to getting the article on shipboard. The seller of the salt procures the sacks, puts the salt in them, and charges the salt and the sacks to the purchaser; this is the cost of the salt; then the charges are added. The whole constitutes the cost of the cargo. The other witnesses, called on both sides, confirm this statement, so far as their knowledge extends; and they add nothing to it, except the fact that salt in bulk, and bag-salt, is each a distinct and well-known article of commerce in the United States.

Upon these facts, the question is, whether

the cost of the sacks is to be added to the cost of the salt in bulk, in ascertaining the dutiable value of salt imported in sacks from Liverpool. The law, under which this duty was exacted, is the act of July 30, 1846, (9 Stat. 42.) This law does not contain any provisions directing the mode in which the dutiable value of articles, upon which it levies an ad valorem duty, shall be ascertained. And the first question raised, and to be determined, is, whether any, and what other law or laws, are so far left in force by this act, as to give the rule for ascertaining the dutiable value of merchandise on which the tariff of 1846 imposes ad valorem duties.

It is argued, by the plaintiff's counsel, that this act has repealed the preceding tariff act of August 30, 1842, [5 Stat. 563,] including the sixteenth and seventeenth sections, which prescribe the mode of ascertaining the dutiable value of merchandise procured by purchase. The act of 1846 contains no other repealing clause than what is found in its seventh section. "That all acts and parts of acts repugnant to the provisions of this act, be, and the same hereby are, repealed." But this act imposes throughout ad valorem duties; and, as already observed, it contains no specific provisions as to the instrumentalities, by means of which the dutiable values of the articles it subjects to duties are to be ascertained, or the times and places in reference to which such values are to be computed, or the items which are to be reckoned as part thereof. Yet such provisions are not only proper, but, as has been shown by experience, are necessary parts of a just and equal system of laws, levying ad valorem duties, and have been so treated since the year 1823 in the legislation of congress. It follows, that the then existing provisions of law on those subjects, so far from being repugnant to this act of 1846, are needful, to carry it into practical effect; and, therefore, could not be considered as repealed by its eleventh section, even if there is found in it no express reference to existing laws, as affording rules on these subjects.

This question of repeal was argued as if it depended on the interpretation to be placed on the eighth section of the act of 1846; and the plaintiffs' counsel insisted, that this section was, throughout, applicable solely to cases of additions made to the invoice cost of imports by the owner, consignee, or agent; and consequently, that the reference made therein to existing laws, adapted them for such cases only. This section is in these words: "That it shall be lawful for the owner, consignee, or agent of imports which have been actually purchased, on entry of the same, to make such addition in the entry to the cost or value given in the invoice, as, in his opinion, may raise the same to the true market value of such imports in the principal markets of the country whence the importation shall have been made, or in which the goods imported shall have been originally manufactured or produced, as the case may be; and to add thereto all costs and charges which, under existing laws, would form part of the true value at the port where the same may be entered, upon which the duties may be assessed. And it shall be the duty of the collector, within whose district the same may be imported or entered, to cause the dutiable value of such imports to be appraised, estimated, and ascertained, in accordance with the provisions of existing laws; and if the appraised value thereof shall exceed, by ten per centum or more, the value so declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected, and paid, a duty of twenty per centum ad valorem on such appraised value." Perhaps this is the true interpretation of the section. But it by no means follows that cases not within it are not to be subject to existing laws, both as to the mode of ascertaining the dutiable value, and the assessment of an additional duty of twenty per centum, in case that appraised value shall exceed the declared value ten per centum or more. It would be strange, indeed, if this penalty were to be inflicted when an attempt was made by the importer to correct the invoice value before entry, and were not to be inflicted when no attempt was made to correct it; and it would be still stranger, if the law pointed out a mode of ascertaining the dutiable value in the former class of cases, but left the latter, probably far the larger class, without any mode of ascertaining that value, save by the invoices made abroad. If, therefore, the eighth section is to receive the interpretation contended for, a point which I do not find it necessary to determine, the inference would be, that having made special provision for a particular class of cases of altered values, it was thought necessary, by express terms, to bring them under the same existing provisions of law, as all other cases were to be governed by; and that therefore it was, that in respect to them, there is an express enactment to that effect; while all other cases are left to be governed by those existing provisions which are not repugnant to the law of 1846, but are necessary to its just and equal execution.

The sixteenth and seventeenth sections of the act of 1842 were not designed to be applicable merely to cases arising under that law. The sixteenth section begins as follows: "That in all cases where there is or shall be imposed any ad valorem rate of duty, &c., it shall be the duty of the collector to cause the actual market value, or wholesale price thereof, at the time when purchased, &c., to be appraised, estimated, and ascertained," &c. And then follows a set of provisions to enable the collector to discharge this duty. This system, digested from former laws, with some alterations, was in force when the ad valorem tariff of 1846 was en-

acted; and the inference is irresistible, that it is to continue to operate upon all cases of ad valorem duties levied on merchandise procured by purchase, under this act of 1846, which has made no new provisions on the subject.

It was argued that, by the act of March 3, 1851, (9 Stat. 629,) congress has, in terms, made it the duty of the collector to cause the dutiable value of articles to be appraised, estimated, and ascertained; and that this shows it was not previously his duty, and proves that there was an omission in the law of 1846, which it was the object of this law of 1851 to supply. But a close examination of this last mentioned law, and of the circumstances in which it was enacted, will lead to an opposite conclusion. Just before this law was enacted, an interpretation had been put by the supreme court on the fifth section of the act of March 1, 1823, (3 Stat. 732,) and on the sixteenth section of the law of 1846, to the effect that the value, at the time of the procurement of merchandise imported from the country of its production, was the value to be ascertained. Greely v. Thompson, 10 How. [51 U. S.] 225; Maxwell v. Griswold, Id. 242. The practice at the custom-house, under instructions from the treasury department, is understood to have been to ascertain the value at the time of exportation. This law of 1851, in its first section, enacted—"That in all cases where there is or shall be imposed any ad valorem rate of duty, &c., it shall be the duty of the collector, &c., to cause the actual market value, or wholesale price thereof, at the period of the exportation to the United States, to be appraised, estimated, and ascertained," &c.

The purpose of congress clearly was, to repeal so much of the fifth section of the act of 1823, and of the sixteenth section of the act of 1842, as fixed the time of procurement as the period, in reference to which the value was to be assessed; and substitute therefor the time of exportation. This clearly implies that congress considered the sixteenth section as still in force. And in this law, also, no means of fixing the value are provided; and there is, therefore, a tacit but clear reference to the modes which theretofore had been provided for that end, by the sixteenth section of the act of 1842, in cases of imports purchased, and by the act of 1823, in cases of imports procured otherwise than by purchase. I say the modes provided by these two laws; because it seems, from the terms of the sixteenth section of the act of 1842, that it can be applied only to imports procured by purchase, and that if procured otherwise than by purchase, it is still necessary to recur to the provisions of the act of 1823, which required proceedings differing materially from those of the act of 1842.

It may be added, that though the question now made concerning the repeal of the six-

teenth section of the Act of 1842, has not, so far as I am aware, been distinctly presented before; yet the case of Griswold v. Maxwell, [Case No. 5,838,] proceeds upon the ground that it is not repealed. And it has been treated as in force in many cases. Morlot v. Lawrence, [Id. 9,815;] Norcross v. Greely, [Id. 10,294.] It is a question of so much importance, that after it had been argued at the bar, I thought it proper to consider it somewhat more at large than its intrinsic difficulty, perhaps, required.

This section of the act of 1842 being in force, we must look to it for the rule governing this case, which is one of purchase. It requires the collector to ascertain the dutiable value of this import, by adding to its market value, "all costs and charges, except insurance, and including in every case a charge for commissions at the usual rate, as the true value at the port where the same may be entered, upon which duties shall be assessed." The object of the law is, to ascertain the true value of the article at the port where the same is entered; and the mode of ascertaining that value is, to add to the market price abroad, all costs and charges. The article entered was salt. But it appears there are two kinds of salt known in this market; salt in bulk, and bag-salt. The latter is what the plaintiffs entered. Their entry is, "2670 sacks salt." The question is, whether the price of the sacks is a cost or charge, within the meaning of this law. That it is, in point of fact, one of the expenses incurred, abroad, to give the article the character of bag-salt, is clear.

But it is insisted that it is not one of the charges, within the meaning of this law, because it has never been known as such to merchants. This may be admitted; but is it not one of the costs of the article known as bag-salt? It is argued that "all costs and charges" means no more than all charges. But it is the duty of the court, in construing a statute, to give effect to every word used by the legislature, if an appropriate meaning can be attached to it. And inasmuch as the cost of the bags is in fact one of the costs of the article entered, if it be true that it cannot come under the word "charges," an appropriate effect can be given to the word "costs." Among the items, denominated "charges" in the invoices, are the expenses of carting the bags. It is not denied in the protest, nor is there any ground to deny, that this is properly denominated one of the charges, and is to be added to the market value of the salt. If so, it would be strange, if the expense of the sacks themselves were to be excluded. Take the definition of the word "charges" given by one of the witnesses—the expenses of getting the article on shipboard; if the cartage of the sacks comes into the charges, it must be because the sacks are a component part of the article bag-salt; and if so, the cost of the sacks is one of the costs of that article.

This word "costs" is used for the first time, I believe, in this law, in addition to the word charges. See Acts 1823, (3 Stat. 732, § 5;) Acts 1828, (4 Stat. 273, § 8;) Acts 1832, (4 Stat. 593, § 15.) And I do not perceive any sound reason why it may not be so construed as to cover the expense of packages, in which imports usually purchased in bulk are placed, after the purchase, and before exportation. This expense is strictly one of the costs of the article as imported, and at the same time it does not enter into the market value of the article abroad, which is sold in bulk, as it would, if there sold in such packages. It differs, also, entirely from the case of a duty expressly levied upon the article in such packages, as upon wine in bottles; and from the case of a specific duty upon salt, as under the act of 1832. My opinion is, that the cost of packages, into which articles purchased in bulk are placed, before exportation, by means of which the article, when thus imported, has acquired in commerce a distinct character, as bag-salt, in contradistinction to salt in bulk, is one of the costs of that import, within the meaning of the sixteenth section of the act of 1842; and consequently, that the cost of the sacks was in this case properly included in the sum on which the duty was to be assessed.

Pursuant to the agreement of the parties, a verdict is to be directed for the defendant.